Williamson et al. vs. Walker et al.

---

JAMES WILLIAMSON, et al., plaintiffs in error, vs. LAWRENCE WALKER, et al., ex'ors, defendants in error.

A fraud practiced by an executor, in the sale of his testator's effects, is a good defence to an action on a note given for the article on the sale of which the fraud was practiced.

Certiorari, in Taylor Superior Court. Decision by Judge WORRILL, at October Term, 1857.

The facts of this case are as follows:

Lawrence and Freeman Walker, executors of Persons

Williamson et al. vs. Walker et al.

Walker, deceased, brought suit in a Justice's Court, against James Williamson and W. R. Miller, on seven promissory notes, each for thirty dollars. The notes were given for two mules, bought by Williamson at a public sale of the estate of testator, and Miller signed them as his security.

Williamson appeared at the appearance Term of the Justice Court, and pleaded,

1st. A breach of warranty.

2d. Total failure of consideration as to so much of said notes as was given for one of said mules—the same being one hundred dollars.

3d. Partial failure of consideration as to the same.

4th. Fraud and misrepresentation.

Upon the trial, plaintiffs offered in evidence the notes.

Defendants introduced *Jesse Stallings*, who testified, that he was the auctioneer at the sale of said property; that there was an apparent defect in the eyes of the mule, and that it was thought to be about blind, and was selling for twenty-five dollars when Freeman Walker came up, and being asked if the mule was not blind or nearly so, he replied, "that the injury to the eye was caused by the rubbing of the blind of the bridle, and that the mule's eyes were good." The bid was raised immediately from twenty-five to seventy-five dollars, and the mule was knocked down to Williamson at one hundred dollars.

*Mr. Martin* testified, that he had known the mule ever since defendant purchased it; it was *moon-eyed;* blind at times, and could see a little at other times; was worth twen-five or thirty dollars.

The jury found for the plaintiff twenty dollars in each case. Thereby allowing defendant the sum of seventy dollars on account of the unsoundness, there being seven cases, each on a thirty dollar note.

Plaintiffs excepted, and sued out certiorari to have said findings reversed.

It was agreed that the decision in one case should govern all.

The presiding Judge of the Superior Court, upon hearing the case, ordered a new trial, upon the ground that the jury in the Justice's Court found contrary to the evidence, it being his opinion that there was no evidence to authorize them to find that plaintiffs intended to bind themselves individually, upon the warranty of the mule; and holding, that although plaintiffs warranted the mule, yet they could not, under the Act of 1854, bind the estate of their testator.

To which decision counsel for defendants excepted.

GRICE & WALLACE, for plaintiffs in error.

REESE, for defendants in error.

*By the Court.*—McDONALD J., delivering the opinion.

The presiding Judge in the Court below seems to have put his decision on the ground solely that the representation of the executor was a warranty and nothing more.

A warranty may be made without fraud, and bind the party for any defect in the article sold at the time of sale, whether the defect was known to him or not, and the Act of 1854 protects the executor from *personal* responsibility on such a warranty, made at the sale of the testator's effects. It would be monstrous to hold, that by reason of that statute, an executor, by a wilful misrepresentation of the soundness of property sold by him as executor, which is known by him to be unsound, might impose on the community, and increase the assets of the estate. The law does not countenance this trickery and unfair dealing in the representatives of estates, and the statute affords no protection in such

case.   The jury which tried the cause, were warranted by the
evidence to find that the executor had been guilty of a fraud
in making the representation in respect to the eyes of the
mule, and to allow the defendants the excess for which the
mule was sold to them over his actual value, by reason of
the fraud, as a credit on the notes.   The assets of the estate
will not be injured by that; for, if a mule of the value of
thirty dollars only, came to the hands of the executor and by
reason of his fraud, one hundred dollars instead of the thirty
came to his hands, is it right that the estate should retain the
difference?   There is no reason why the assets of the estate
should be increased by such fraud.   It would be offering a
premium for fraud and wrong to persons holding the office of
executor.   We do not say that the executor would not be li-
able personally in an action against him for the fraud; but
it is against conscience for the estate to retain money thus ob-
tained.   The estate cannot be injured by litigation occasioned
by the fraud of the executor.   Expenses incurred by his
misconduct cannot be allowed him as a charge against the
estate.   Hence the estate, in such cases, cannot be the loser
if those who have the supervision of the executor's accounts
do their duty.

But it is said that if the purchaser has been injured by the
fraud, his remedy is in a Court of Equity.   Courts of Chan-
cery will grant relief, no doubt.   1 *Vernon*, 227.   Courts of
Law have concurrent jurisdiction with Courts of Equity, in
matters of fraud, and there can be no reason to send a de-
fendant to a Court of Equity in such case.   The remedy is
more tedious, troublesome, and expensive to all parties.   In
that Court reparation would be made to the injured party,
and the culpable executor would be decreed to pay expenses
and costs, and the estate would be left in the condition it
would have been, if there had been no fraud.   Such will be
the precise effect at law, for the fraudulent executor's account
cannot be allowed by the Ordinary, for his expenses, costs,
and trouble.

We are not to be understood as deciding that a person who purchases at an executor's or administrator's sale, and who has made a bad bargain, and there has been no fraud, has a remedy. Such sales stand in that respect on the footing of sales in market overt.

Judgment reversed.