15610.  EDENFIELD *v.* ROUNTREE.

1.  As a general rule, the doctrine of caveat emptor applies to administrators' sales; but fraud or misrepresentation in such a sale may be a good defense to an action upon a note for purchase-money. Where an administrator obtained leave to sell an entire brick building and advertised the property for sale as two designated lots fronting 30 feet each on a certain street, and described the building as "being 60 feet wide," and the advertisement was read at the public sale, and the purchaser relied on the truthfulness of the representations thus made, and received from the administrator a deed describing the lots as having such frontage, when in fact the administrator's intestate had sold to another 10 feet of this frontage, including the entire wall on one side of the building, which at the time of the administrator's sale was in the adverse possession of another, the doctrine of caveat emptor would not prevent the purchaser from the administrator, when sued by the administrator for the balance of the purchase price, from setting up the misrepresentation and obtaining an abatement or apportionment of the purchase price, if the proportionate value of the deficiency was capable of determination. The administrator, in assuming to state the exact frontage, would be bound to know of the previous sale by his intestate, and would be chargeable with the misrepresentation, regardless of whether he actually knew of its falsity.

2. "An administrator can not sell property held adversely to the estate by a third person; he must first recover possession." Civil Code (1910), § 4033. Where an administrator's deed includes both land in possession of the estate and land held adversely by a third person, and the respective properties and values are capable of exact division and determination, the deed may be held void pro tanto, as to the part in adverse possession.

3. Although the city court had no jurisdiction to cancel the deed as prayed for in one of the alternative prayers of the defendant's plea, the jury would have been authorized, under the pleadings and the evidence as to the value of the 10-foot wall and deficiency in frontage, to find for the defendant in the amount of that value, as a recoupment to the consideration represented by the notes sued on. It was therefore error to direct a verdict for the plaintiff for the amount sued for.

4. There being conflict in the evidence as to whether there was compliance with the statutory requirement of ten-days notice before suit, as a condition of the recovery of attorney's fees provided for in the notes, the direction of a verdict for such fees was error.

DECIDED FEBRUARY 12, 1925.

Complaint; from city court of Swainsboro—Judge Kirkland. March 24, 1924.

*Arthur W. Jordan,* for plaintiff in error.

*Anderson & Trapnell,* contra.

JENKINS, P. J. 1. It is a well-established general rule that "the doctrine of caveat emptor applies to administrators' sales;" and the provisions of the Civil Code (1910), § 4122, for apportionment of the purchase price on account of deficiency of acreage, or a rescission of the sale, have no application to such sales. *McKinnon* v. *Sheffield,* 149 *Ga.* 219 (1) (99 S. E. 855); *Greer* v. *McDonald,* 141 *Ga.* 309 (80 S. E. 1002); *Mercer* v. *Sager,* 129 *Ga.* 123 (58 S. E. 1037); *Thrift* v. *Baker,* 144 *Ga.* 508 (87 S. E. 676); Civil Code (1910), § 4032. Thus, it has been stated as a general rule that, "when one applies to an executor or administrator for information as to the title to land advertised for sale by such executor or administrator, or as to its quality or quantity, it is the same as if application were made to one who had no interest in the land. An executor or administrator can not warrant the title; and this being so, his statements fix no liability upon the estate he represents nor upon himself." *Wells* v. *Harper,* 81 *Ga.* 194 (6 S. E. 913, 12 Am. St. Rep. 310). But there are recognized exceptions to this rule. A fraud or misrepresentation practiced by an executor or administrator in the sale of his testator's effects is a good defense to an action on a note given for the property on the sale

of which the fraud was practiced (*Williamson* v. *Walker,* 24 *Ga.*
257, 259, 260; *Kirkland* v. *Wade,* 61 *Ga.* 478, 480; *Kingsbery* v.
*Love,* 95 *Ga.* 543, 22 S. E. 617; *Keen* v. *McAfee,* 116 *Ga.* 731, 42
S. E. 1022; *Colbert* v. *Moore,* 64 *Ga.* 502; *Holmes* v. *Holmes,* 140
*Ga.* 219, 78 S. E. 903; *Jones* v. *Warnock,* 67 *Ga.* 484); and the
general rule stated will not charge such a purchaser "with notice
as to the acreage being sold, or the boundary of the tract, where
the representative of the estate fraudulently undertook to give
the exact acreage" or dimensions of the property, "and to point
out the boundary lines, professing to know these facts himself and
not leaving the purchaser to his own resources to acquire this in-
formation. If the purchaser relied on these false representations,
he would be defrauded and entitled to a rebate for the shortage in
acreage" or dimensions of the property, "whether the representative
of the estate knew that his representations were false or not at the
time of making them." Redfearn on Wills & Admn. of Estates, 551;
552; *Folsom* v. *Howell,* 94 *Ga.* 112 (2) (21 S. E. 136) (where
there was no actual fraud, but the representative assumed to state
exact data, selling 38-6/10 acres as 50 acres). See also *Brannen*
v. *Brannen,* 135 *Ga.* 590 (69 S. E. 1079); *Southern Cotton Mills* v.
*Ragan,* 138 *Ga.* 507 (75 S. E. 611).

(*a*) Where an administrator of an estate applied for and was
granted leave to sell a described entire brick store building, ad-
vertised it for sale as "lots 5 and 6 in block 16, said lots fronting
30 feet each on Second Street and extending 90 feet to 30-foot
alley, situated in the city of Stillmore, said building being 60 feet
wide," and this advertisement was read at the public sale, and
where the purchaser relied upon the truthfulness of the representa-
tions thus made as to the property being the entire building and
60 feet in width, and received a deed from the administrator,
describing the lots as having such frontage, when in fact the ad-
ministrator's intestate had previously sold to another 10 feet of the
frontage, including the entire wall on one side of the store building,
which was in the adverse possession of another, and the property
and building owned by the estate actually contained only a 50-foot
frontage, the general rule of caveat emptor would not prevent the
purchaser from setting up the misrepresentation, in defense to an
action by the administrator for the balance of the purchase price
bid for the property, and obtaining an abatement or apportionment

of the purchase price on account of such misrepresentation, where the proportionate value of the deficiency was capable of determination. In assuming to state the exact frontage of the property and the building, the administrator would be bound to know of the previous sale by his intestate, and would be chargeable with the misrepresentation made, regardless of whether he actually knew of its falsity or had no actual intention to practice a fraud on the purchaser.

2. Section 4185 of the Civil Code (1910) declares that "a deed to lands, made while the same are held adversely to the maker of the deed, is not void." But the contrary rule at common law, making void all conveyances of land which at the time is in the adverse possession of another, has been preserved in this State as a special rule applicable to administrators' sales, and section 4033 of the Civil Code declares that "an administrator can not sell property held adversely to the estate by a third person; he must first recover possession." *Booth* v. *Young,* 149 *Ga.* 276 (1) (99 S. E. 886) ; *Guthrie* v. *Bullock,* 143 *Ga.* 17 (84 S. E. 59) ; *Downing Lumber Co.* v. *Medlin,* 136 *Ga.* 665, 668 (72 S. E. 22) ; *Hanesley* v. *Bagley,* 109 *Ga.* 346 (34 S. E. 584) ; *Heard* v. *Phillips,* 101 *Ga.* 691 (31 S. E. 216, 44 L. R. A. 369) ; *Thrift* v. *Baker,* 144 *Ga.* 508, 509 (87 S. E. 676) ; Redfearn on Wills & Admn. of Estates, 540, note. While "the object of the provision contained in section 4033 of the Civil Code 'is to prevent the administrator from sacrificing the value of the property by putting it up for sale under such circumstances that the purchaser would buy a lawsuit along with the land'" (Powell on Actions for Land, § 249; *Booth* v. *Young,* supra; *Downing Lumber Co.* v. *Medlin,* supra), the validity of such a deed is subject to attack by others than those having an interest in the estate, even including the holder of the adverse possession, and this is true even though his own lease be void as against the estate. *Booth* v. *Young,* supra. But the purchasers at administrators' sales, as well as at other sales, must not themselves have gone into undisturbed possession; in which event the right to relief is controlled by other equitable principles. *Henderson* v. *Fields,* 143 *Ga.* 547, 548 (85 S. E. 741) ; *Mathis* v. *Crowley,* 146 *Ga.* 749 (2) (92 S. E. 213).

(*a*) Where an administrator's deed to lands includes both property in the possession of the estate and property "held ad-

versely to the estate by a third person," and such respective proper-
ties and their values are capable of exact division and determina-
tion, the deed will not be held altogether void as failing to pass the
title to the property of which the administrator could deliver
actual possession to the purchaser, but may be held void pro tanto
as to that portion in the adverse possession of another.   See *Booth*
v. *Young,* supra (149 *Ga.* 280), where the deed was held void as
to the portion not in possession, but the Supreme Court expressly
withheld its opinion as to whether the instrument would operate
as a. good conveyance of the remaining portion.

3.   "While a city court has no jurisdiction to grant affirmative
equitable relief, it may entertain jurisdiction of an equitable plea
purely defensive in its nature."   *House* v. *Oliver,* 123 *Ga.* 784 (1),
785, 786 (51 S. E. 729) ; *Hanesley* v. *Nat. Park Bank,* 147 *Ga.* 96
(1), 99 (92 S. E. 879) ; *Geer* v. *Cowart,* 5 *Ga. App.* 251 (1-4) (62
S. E. 1054) ; *Swift* v. *Oglesby,* 8 *Ga. App.* 540, 542 (70 S. E.
97) ; *Birmingham Fertilizer Co.* v. *Dozier,* 13 *Ga. App.* 759, 761
(79 S. E. 927) ; *Davis* v. *Preston,* 12 *Ga. App.* 65 (2), 68 (76 S. E.
766).   "The cancellation of a deed is a matter purely and ex-
clusively within the power of a court exercising full and un-
restricted equitable jurisdiction.   The only court of this kind in
Georgia is the superior court."   *Bank of the University* v. *Carlton,*
96 *Ga.* 469, 473 (3) (23 S. E. 388).   The city court of Swainsboro
has no such powers.   But such a court has jurisdiction even of an
equitable plea, which is purely defensive, "and which, if sus-
tained, would result simply in a verdict finding generally in favor
of the defendant, or reducing the amount of plaintiff's recovery,
when such reduction is not brought about by the exercise of any of
the extraordinary powers of a court of equity, such as cancellation,
reformation, equitable set-off, and the like."   *Burnett* v. *Davis,* 124
*Ga.* 541, 544 (52 S. E. 927) ; *Hecht* v. *Snook & Austin Co.,* 114 *Ga.*
927 (41 S. E. 74).

(*a*)   "Recoupment lies for overpayments by defendant, or pay-
ments by fraud, accident, or mistake," and "may be pleaded in all
actions ex contractu, where from any reason the plaintiff under the
same contract is in good conscience liable to defendant.   And in
all cases where, under the laws of this State, recoupment may be
pleaded, if the damages of the defendant shall exceed, in amount,
those of the plaintiff, the defendant shall in such cases recover of

the plaintiff the amount of such excess.    Civil Code (1910), §§ 4352, 4353.

(b)    "Where the defendant, in a suit in a city court on a note for the purchase-money of land, files a plea, alleging that the land is owned by and is in the possession of a third person, and that the plaintiff (the payee of the note) refuses and is unable to make titles to the land to the defendant, and that the note was given and payments on such purchase-money were made to the plaintiff on the faith of his representation that he owned the land and would make a good title thereto to the defendant, which representations were false and fraudulent, and the defendant seeks a recovery of the money paid and a cancellation of the notes,  .  .  the city court has jurisdiction to entertain such defense and permit such recovery." *Norton* v. *Graham,* 130 *Ga.* 391, 393 (60 S. E. 1049). .

(c)    In the instant case the administrator sued upon two promissory notes for a total of $4,033.35 principal, representing the alleged balance due upon the defendant's bid in purchasing the property described in division 1 (a) of this decision, the total consideration of the deed executed to the defendant being $6,050, the defendant having paid the difference in cash.    The defendant in her plea and answer set up that 10 feet of the frontage of the building, including all of one of the side walls, was at the time of the administrator's sale in the adverse possession and ownership of another, that she had been excluded from its possession, that the frontage had been misrepresented as described, that she had relied on such representation, and that the alleged deficiency was worth $2,000.    The original plea, termed a "plea of total failure of consideration" and a "plea of recoupment," contains alternative prayers and averments,—(1) that, as the entire sale was void, "both parties should be placed in statu quo as of the day of the sale,—that is to say, plaintiff, by the judgment of the court, should be required to pay to defendant all of the money paid to plaintiff,— the sum of $2,000 with interest thereon to this date, that all of the deeds executed between the parties should be canceled and said building returned to plaintiff, that defendant should be required to pay a reasonable amount for the use of said premises as occupied by her and for the time occupied by her, and that the notes sued upon should be returned to this defendant," that "there be an

accounting between the parties hereto, that defendant have judgment against the plaintiff for the amount paid in cash, -less the rental value of said premises as occupied by this defendant, that said building be returned to plaintiff, and all the papers executed between the parties hereto be canceled and satisfied;" or (2) that her claim of $2,000, "or whatever sum this court may deem fit and proper," for the value of the wall and deficiency in frontage be allowed. By amendment the plaintiff elaborated the alleged misrepresentations as to the frontage and wall, and sought to recover "the value of said ten feet . . and said wall in an amount that said ten feet width bears in proportion to the value of said building and said lot as represented by said plaintiff." There was no demurrer to this plea, and there was evidence tending to support the essential averments. Under the foregoing rulings, while the city court had no jurisdiction with reference to the cancellation of the deed made to the defendant, as prayed for in the defendant's plea, it might have had jurisdiction to grant the remaining relief to the parties sought in the first of the described alternative prayers, save for the fact that the outstanding deed would remain as a cloud upon the plaintiff's title, and thus prevent the parties from being placed in statu quo. The defendant, therefore, was not entitled to relief under the first theory of defense. However, under the rules stated and the evidence as to the value of the ten-foot wall and the deficiency in frontage, the jury would have been authorized to find for the defendant therefor, as a recoupment to the consideration represented by the notes. It was therefore error to direct a verdict for the plaintiff for the amount sued for.

4. With reference to the attorney's fees, while there was evidence supporting the plaintiff's allegations and contention that the ten days notice had been given and was received by the defendant, there was evidence from which the jury might have found that it had not been received by her at all, or within the required time. For this additional reason, as to the item of attorney's fees it was error to direct a verdict for the plaintiff.

5. The court having erred in directing a verdict, a new trial should have been granted to the defendant upon this ground of her motion.

*Judgment reversed. Stephens and Bell, JJ., concur.*